Thank you, your honor. May it please the court, my name is Diane Haar. I am the attorney for Plaintiff Appellant Colleen Colunga, and this is a social security disability case. I would like to reserve two minutes, if I may, for rebuttal, and I will try to get through this as quickly as possible. We have three issues. The first issue is that the ALJ presented a hypothetical question to the vocational expert and acquired jobs that my client could do based on a hypothetical question that did not include all of the limitations he found her to have in his decision. What limitations were not included? What limitations do you think were not addressed? Occasional supervision, that was the limitation that was not included, and I will say It did include interactions with co-workers, and aren't supervisors co-workers? His hypothetical question included co-workers, but not supervisors. But supervisors are co-workers, aren't they? Isn't co-workers a broader category that would include? This isn't traditionally how it's treated in a social security hearing. Usually co-workers and supervisors are separate. You can also see that in the DOT when they're talking about differences in jobs, as well as SSR 83-10 describes difficulties with co-workers and supervisors, and actually separates co-workers and supervisors, and I know SSR 83-10 is actually cited in my brief. I would also say that my opposing counsel conceded that the ALJ did not include the supervisor's component of the question to the vocational expert, and therefore the issue before the court became whether it was harmful that the ALJ did not put it to the vocational expert. It's our position that it is harmful, and the reason that it is harmful is because the ALJ never listed jobs that my client could perform. So there's no jobs in the record that my client would have. Could you explain how a supervisor would be treated differently than a co-worker for these circumstances? Because it's not obvious. Of course, Your Honor. I am pulling up SSR 83-10. It describes stress and work, and one of the things that it does is it talks about the differences with supervision. Here we go. Oh, I'm sorry. Change that to SSR 85-15. My apologies. I should have checked first. So 85-15 talks about something that's actually on point for this case, and it talks about an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision. The knowledge that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons. The reason why this is relevant is, first of all, it's separating supervision from co-workers. Second of all, my client was found to have mental illness as a severe impairment, and part of that severe impairment is her difficulty with stress. So SSR 85-15 is not only... My own notes, and I could be wrong, suggest that she was not shown to have a severe mental impairment. What impairment do you identify? Let me pull that up. I'm pulling up the severe impairments right now. Affective disorder. What is that exactly? It is a mental health impairment. In social security parlance, if you look in listing 12.04, it describes affective disorder as similar to depression. But affective disorder is a mental health impairment. If you look in the record at page 48, heading number three in the ALJ decision describes the severe impairment. So we have chronic obstructive pulmonary disease and affective disorder. So COPD and affective disorder. But the COPD would not... It's hard to imagine how the COPD would be affected by co-workers versus supervisors. It's really the affective disorder that you're claiming there's a distinction in how she would react. Yes, your honor. What I'm actually claiming is that the evidence supports it. So I didn't come up with this theory on my own. I would go to Dr. Christensen, Dr. Frisch, and Dr. Torgo. So let me make sure I'm quoting the right one here. The ALJ gave great weight to the opinions of Dr. Frisch and Dr. Torgo. They are doctors for the state agency, so doctors for the Social Security Administration. This is in the record at page 54. They were saying that she needs a work setting with limited demands for social interaction. They are psychologists. This does deal with the affective impairment. In addition, the ALJ gave great weight to Dr. Christensen's opinion that Colleen could get along with supervisors and co-workers. He delineated supervisors and co-workers if contact were minimal. And this is in the record at page 53. So I'm not the one coming up with that it's the mental health impairment. It's actually in the record. What's your response to the district court's observation that the DOT descriptions for the relevant jobs that were at issue did not include significant supervision and that, therefore, it was harmless? I have two responses. First is that the district court had to make its own findings to come up with that. But second, so the district court decided that it didn't include supervision because there wasn't talking and there was another element. But that is where SSR 85-15 comes in. The district court didn't consider other parts of supervision, and that's the dealing with stress. That's the being supervised. That's where SSR 85-15 is discussing the knowledge that one's work is being judged. It's not just about if the person is talking. In addition, the DOT describes the jobs and describes in those jobs reading directions, remembering directions, things that go along with supervision that don't necessarily involve talking or in-person interaction. As we know, our supervisors may not be over us talking to us or directing us 100% of the day, but we are following their supervision 100% of the day. If this court doesn't have any more questions on that issue, I would say that it does go. Our argument is precisely whether or not this was harmful. And as I said, the district court had to make its own findings to find that it was harmless. That is something that SEC versus Chenery Court, the Supreme Court, found is prohibited. So the courts are bound to the reasons that the ALJ asserts. They can't go and make their own findings. This is also in Connor v. Barnhart, Zavlin v. Colvin. These are cited in my brief. That's the same problem with the second two issues as well. And those two issues, in short, since I am running out of time, go to the ALJ did not properly consider my claimant's testimony. So the ALJ can only reject my claimant's testimony as to the severity of her symptoms with specific, clear, and convincing reasons. He also did not consider Kaola, her daughter's testimony. He had to give reasons germane to Kaola for rejecting it. The commissioner agreed with me that he did not reject in his decision Kaola's testimony. I would say those reasons weren't there. And that also would require this court to make findings that aren't in the ALJ decision precisely because those reasons aren't there. Because the first element of specific, clear, and convincing reasons to reject testimony requires that the ALJ specify the testimony he plans to reject. That's Holohan v. Massonari, also cited in my brief. This didn't happen. If you review the decision, and I'm running out of time, so I'm going to have to direct you to my brief, but if you review the decision for impacts on her standing, her walking, her need for naps, that's not in the decision at all. The ALJ never specified it. He never adopted it. He rejected it without telling us why. Just left it out. And that's all I have, Your Honor, unless you have more questions. You can reserve the remainder for rebuttal. And Mr. Modi? Thank you, Your Honor. Good morning. Good afternoon. My name is Asim Modi on behalf of Andrew Saul, Commissioner of Social Security. We asked that this court adopt the District Court's common-sense approach in examining the ALJ's decision and the record and affirm the Commissioner's non-disability decision in this case. Turning first to the ALJ's finding that Klayma was not disabled because she could perform other work in significant numbers in the national economy, we can see that the ALJ's hypothetical questioning to the vocational expert did not have a separate expressed reference to supervisors in the hypothetical question, but we submit that the ALJ's non-disability finding still clears the not-high threshold for evidentiary sufficiency because the vocational experts, as the District Court pointed out, the vocational experts' testimony was broad enough to encompass the supervisory restriction because it did address... Was there any expert below that made this distinction between coworkers and supervisors? Was there testimony from an expert? I guess it was just her own testimony that she was alive. I'm sorry, Your Honor, I'm not sure... Was there testimony from any expert other than her own testimony that she would have problems because of her disability working with a supervisor as opposed to coworkers? Okay, yes, Your Honor. So the medical opinion evidence that my colleague Ms. Haar referenced does mention that she would require some limitations in interacting with others in the workplace. So it was more of, I think, a general restriction, and I think that encompasses supervisors in there. But I think, as we know in our brief, and I think as the District Court points out, and I think as Judge Collins noted earlier, the restriction to coworkers and the public, I think, inherently encompasses the restriction to supervisors because I think... But she points out that there is a difference between having to deal with a peer and having to deal with a boss, the latter being a lot more stressful, and that wasn't taken into account. Well, Your Honor, I think I'd like to reference what my colleague mentions with her argument, because when she references Social Security Ruin 8515, she's talking about a claimant's complete inability to deal with a supervisor, and that's not what the ALJ found here. The ALJ found that the claimant could interact occasionally with the supervisor, so talking about a circumstance where she was wholly unable to do so is simply not relevant. Isn't that the concern, that the ALJ didn't find that she could occasionally work with the supervisor, only found that she could occasionally work with her coworkers? No, the ALJ's article's finding does include a restriction to occasional contact with the public, coworkers, and supervisors. Okay. And so that's what the ALJ found. But I think, beyond looking at the ruins, I'd like to also mention that we can't look at this in a vacuum, but we have to look at the specific occupations that the ALJ relies upon in finding claimant not disabled, and the representative occupations underlying the ALJ's non-disability finding. As noted by the District Court, per the DOT, none of these jobs require significant taking of instruction or orders from a supervisor. What's your response to her contention that that involved the District Court in impermissible fact-finding in violation of Chennery? Well, Your Honor, that was in the Dictionary of Occupational Titles, and I think my colleague is also overlooking this circuit's harmless error precedent, and I think she references Zavalin, which is a Ninth Circuit case where the court endorsed looking to the DOT to see whether the ALJ's finding could still be upheld with substantial evidence supporting the non-disability finding. And so, yes, the specific references to the DOT and the limited social interaction required for each of these occupations wasn't in the decision, but the DOT is a reliable vocational resource recognized by the agency and by this court, and looking at the social requirements for all these occupations in the DOT, as we note in our brief and as the District Court points out, none of these jobs require any talking, and at most, only occasional hearing. These jobs require the lowest level of complexity when it comes to social interaction, and as I mentioned earlier, they require no significant attending to the orders of a supervisor or taking instruction from a supervisor. Well, but her argument is that it's always inherent with any job, and that seems to be true. It's hard to imagine too many jobs where there's not a supervisor at some level. I have a more fundamental question. Are there cases out there where disability has been granted to someone because in these circumstances where they've said, hey, I can work with coworkers, even occasionally, but supervisors are off the table, and that is like a per se decision that that individual just cannot work with a supervisor in that circumstance, and therefore they don't have another job opportunity. Is there precedent out there that would support that position? Well, Your Honor, I think that's not the circumstance presented here, Your Honor, because nobody's disputing that she could interact occasionally with a supervisor. Ms. Hard does not challenge the ALJ's evaluation of the psychiatric impairment, so there's no disputing that she could interact on an occasional basis with a supervisor, and as we know, and I think as it gets to the speculation about what effect... Well, I think I understood the argument to be there's not substantial evidence that supports the ALJ's finding that she could work occasionally with a supervisor. No, Your Honor, the parties don't dispute the ALJ properly evaluating the psychiatric impairment. That's not a challenge made in any of Ms. Hard's... So the only question is whether she would be fit for these other positions. If that occasional restriction to the supervisors had been expressly presented to the vocational expert, would that have changed anything? I think that's the real question here, and while we can speculate about what may or may not have happened, the question is still whether we have substantial evidence that supports the non-disability finding, and if you look at the vocational expert's responsive testimony to the hypothetical questioning, coupled with the dictionary of occupational titles, which for these specific jobs relied upon in finding claimant not disabled, the DOT plainly sets forth that he did not require any significant interaction with the supervisor. This is not hypothetical, this is plainly stated in DOT. So while we can speculate about the supervisory limitation, the DOT plainly states that these jobs require at most minimal social interaction, including with the supervisor, and non-compliance. Is this a case in which there's an accumulation of errors that might warrant sending it back? Because we have this issue where we have to talk about harmless error, and we've got the daughter's testimony being overlooked, and then we have a lack of specificity in addressing what was found not credible in her testimony. Do we just have enough here that it tips over that it should go back? Your Honor, I don't believe that's the case, because I think the ALJ's analysis, you know, we can set aside the vocational findings for a moment here, and then turn to the symptom testimony findings, and the ALJ's symptom testimony findings, I think, are sufficiently specific in this case, and they underscore that the overwhelming medical, non-medical evidence and opinion evidence is, of course, a non-disability finding. As the ALJ highlights, when it comes to respiratory impairments, the ALJ notes that there was no objective corroboration for her complaints when it comes to respiratory impairments, that there was normal pulmonary function testing, normal chest X-rays, that there were no opinions that endorsed the claimant's allegations, which is somewhat unusual in a Social Security case where there was no treating physician who even endorsed the claimant's assertions here. Instead, the physicians who are in the record all endorsed the ALJ's non-disability finding when it comes to the respiratory condition. Beyond that, the ALJ highlights the claimant herself repeatedly denied experiencing significant respiratory symptoms, that the treating physicians noted significant and dramatic improvement in her respiratory symptoms, and they note claimant's ability to perform a wide range of activities, including traveling within Hawaii, traveling to the mainland, performing chores inside and outside the house. And because those reasons were sufficiently specific and well-supported for the claimant, under Ninth Circuit precedent, they extend similarly to the similar testimony from claimant's daughter. And so at the end of the day, while we can see that there are aspects of the ALJ decision that are not ideal or a model, that's not the question. It's whether there is still sufficient evidence to support the non-disability finding. And here, when you look at the bulk of the vocational evidence, including the DOT and the BE's testimony, the benign objective clinical findings, claimant's denials, respiratory symptoms, claimant's improvement with treatment, the opinions of the state agency reviewing physicians and psychologists who support the ALJ's non-disability finding, the lack of contradictory opinion evidence, all of this underscores that the ALJ's non-disability finding should be affirmed in this case, Your Honor, and there would be no reason for this case to be sent back. Thank you, counsel. Ms. Haru, we'll give you a minute for rebuttal. Thank you, Your Honors. I'd like to say quickly, my opposing counsel mentioned substantial evidence. However, Flake v. Gardner cited in my brief, where there's legal error, even if the decision is supported by substantial evidence, it still goes back where there's harmful legal error. I would say, as far as the DOT, it's not that easy to interpret. It was declared obsolete by the Department of Labor in 1991. These jobs, kitchen helper was last updated in 1986. Steward's labor and hand packager were updated in 1988. It's why it requires a vocational expert, because none of us are experts in things that happened before we were born or out of school. And finally, testimony cannot be discredited solely with objective evidence, and that is Bunnell v. Sullivan, also cited in my brief, and that's what my opposing counsel was arguing was correct. Thank you. Thank you both for your excellent arguments.
judges: Clifton, Nelson, Collins